**Raymond BLACKBURN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 7224.**

Court of Appeals of Alaska.

April 29, 1983.

Carmen Gutierrez, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Valerie Tehan, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

COATS, Judge.

On September 20, 1981, Raymond Blackburn shot his brother Dan with a .45 caliber pistol while Dan was sleeping. The bullet lodged in Dan's rib cage but fortunately did not do permanent damage. Blackburn was acquitted because of insanity of the class A felony of first-degree assault.[1]

---

1. AS 11.41.200(a)(1) states:

    *Assault in the first degree*: (a) A person commits the crime of assault in the first degree if

    (1) that person recklessly causes serious physical injury to another person by means of a dangerous instrument;

After a September 23, 1982 commitment hearing, Judge Victor D. Carlson found that probable cause existed to believe that Blackburn was suffering from mental disease which caused him to continue to be a danger to the public peace and safety. He committed Blackburn to institutional treatment for a term not to exceed twenty years, which is equal to the maximum term of incarceration for a class A felon. AS 12.55.125(c). Judge Carlson found that had Blackburn not been acquitted because of his mental illness, he would have been a worst offender within his category of offense, deserving the maximum sentence.

Blackburn appeals, contending that his commitment term is excessive. He requests a commitment term not longer than ten years. We affirm the twenty-year term.

## DISCUSSION

Taking into consideration "the nature of the crime and the character of the offender," we find that "the goals of rehabilitation of the offender and protection of the public" support Blackburn's commitment term. *Clark v. State,* 645 P.2d 1236, 1240 (Alaska App.1982). Had Blackburn "been criminally responsible, we believe that a twenty-year term of imprisonment would not be clearly mistaken...." *Id.* at 1241.

### Nature of the Crime

Judge Carlson determined that Blackburn's actions "were completely without provocation," and that the shooting was "extremely dangerous and in cold blood. The victim was asleep, wrapped in a sleeping bag, completely without any defense, [and] couldn't escape in any way." It was only fortunate that Blackburn's brother was not killed or permanently injured by the shooting.

### Character of the Offender

Blackburn was twenty-eight years old at the time of his offense, and had been admitted to A.P.I. fifteen times. He appears to represent a clear threat to the safety of his family and the public. Judge Carlson reviewed two psychiatric reports prior to the commitment. Dr. Coons evaluated Blackburn as a "grossly psychotic individual" who "appears to have an extensive delusional system centering around a series of paranoid ideas about people out to get him because he has cracked some secret code...." Dr. Hamill concluded that Blackburn suffered from "severe mental illness diagnosed as Schizophrenic Disorder, paranoid, chronic. He continues to have multiple delusions of persecution and he believes that a number of people are harassing him, trying to take possession of his body, [and] controlling his mind...." Since Blackburn was not favorably responding to treatment and his long-standing mental illness had not improved, Dr. Hamill concluded that his overall prognosis was "quite poor" and that he remained a danger to others.

Blackburn had two prior offenses, for disturbing the peace and for carrying a concealed weapon. The latter offense occurred when police arrested Blackburn after an altercation with two knives strapped to his legs. He was apparently screaming threats of retaliation and violence. Blackburn's relatives related multiple instances of violence and potential violence, and were in favor of a commitment.

## CONCLUSION

AS 12.47.090(e) entitles Blackburn to a yearly review of his commitment. The exact length of time that he would continue to pose a danger to others could not be determined at the time of his commitment. *Clark v. State,* 645 P.2d at 1240. In the future Blackburn may "have a claim that there is a less restrictive means for treating [him] which is consistent with protecting the public," *id.* at 1241, but the commitment term is not impermissibly excessive at this time. Therefore, we AFFIRM the commitment term.